And we come to the final case this morning, United States v. Chatman. Good afternoon, your honors. May it please the court, my name is Adam Stevenson, and I represent the appellant Martise Chatman. To borrow the government's word and perhaps apply it a little bit more broadly to this case, we deal with several imprecise aspects of Mr. Chatman's sentencing. And it led to several errors with regard to both conditions of, excuse me, the conditions of supervision in Mr. Chatman's case, as well as at least potentially with regard to his confinement, his ultimate sentence. This court has addressed several cases involving conditions of supervision, and many of the conditions here suffer from very similar faults to those cases, Thompson-Segal, Capps, and others. But today, and I'm happy to discuss those standards, or excuse me, those conditions with the court, but I'd actually like to begin today with the inaccurate sentencing information with regard to the confinement. Well, the one you're referring to, you started to use the word standard. It's been referred to as the standard conditions where the problem really lies. There are some standard conditions, but for instance, one of the conditions at issue in this case is with regard to alcohol consumption. And that's come out to the benefit of your client? At this point, the problem is with regard to the notice to Mr. Chatman of when exactly he will have crossed that line. And I'm not, we're not saying that it's a difficult problem to solve, but clarity would be of great benefit to Mr. Chatman as well as the court. The court defines excessive alcohol consumption in this case as four drinks in a day. The key operative word there being drink. And the government as well as ourselves note that there are some quote-unquote standard definitions that governmental agencies use. And a remedy in this situation would be for the district court to specifically refer to them. We would not take issue if the district court were to say four drinks per day as defined by the Research Center. How do they define those? They specifically give a 12-ounce beer, 1.5-ounce shot of liquor, as well as, I believe, a 2-ounce shot of wine. Very cheap salons. Accurate. But what if the district court used that? You still could have, what, four in one hour, four in five hours? Correct. You wouldn't want someone drinking four in one hour, right? So that wouldn't do it for you. Correct. And we don't necessarily take issue with the quantity four or even with the temporal practice, the day. And the government actually refers to a case, Siegel, where the court referenced 15 drinks in a week. But they reference that only in passing as one potential definition of excessive, in addition to going into others. All we would ask is that if the district court does decide on a particular definition of excessive, that it's clear enough for the defendant to follow it so that the defendant clearly knows when he has passed. And if it is four drinks within a 24-hour period, he needs to know what a drink is so that he does not inadvertently cross the line when he does not otherwise intend to do so. But is it really your position that if a district court says someone has several DUI convictions and he really only has two, that that would be reversible error? It is, Your Honor. And it was not the district court that said several convictions. It was actually the government. And then the district court issued Mr. Chapman's sentence actually denying his mitigating sentencing argument as a result of that. And several is defined, Miriam Whitster, for instance, as three or more. And Mr. Chapman in this case only has two. And a similar problem with regard to his prior drug convictions. And the district court, and the government acknowledges this in its brief, that the district court specifically mentioned the convictions for driving under the influence, addressing Mr. Chapman's argument that the career offender guideline overstated his criminal history. And the same is true with regard to the possession offenses for a very similar count. The district court said that the impact that your long history has on the community that is being punished here today, and the district court with regard to the drunk driving convictions, a significant number of convictions based on these driving offenses which include alcohol. And part of my sentence will be to address this alcohol situation. And the court in Durham mentioned that just a mere potential that inaccurate sentencing information impacts the ultimate sentencing decision is enough for reversible error in a case. In Durham it was with regard to firearms usage. That's very similar to the unpublished case of United States versus Perez, where the government used the plural term firearms or guns. When Mr. Perez's instant offense only had one firearm and he had no prior history of firearms usage at all. The district court in that case then talked about the potential violence with regard to Mr. Perez and how the prosecutor had those facts right leading to its sentence. That's very similar here. The government in its own term imprecisely referred to the number of DUI convictions as well as the number of possession offenses and the district court then specifically denied Mr. Chapman's sentencing argument at least in part and at least potentially based upon that inaccurate sentencing information. Well, I mean, Chapman's counsel below stated in court that he had struggled with drugs and alcohol most of his life. Doesn't that sort of end the discussion as to whether he has a significant problem with alcohol that the district court could address? With regard to his use of alcohol, yes. With regard to driving under the influence, and actually there's quite a discussion in the case led again by the government with regard to how DUI offenses, drunk driving offenses, were tantamount to a violent offense. They were more than mere driving offenses. That was not accurate. Mr. Chapman does have a substance abuse treatment need and there were conditions put on that to address that. But not necessarily just the substance abuse needs that Mr. Chapman had. And that's the crux of the issue was the court specifically referred to the specific driving record and the offenses involving alcohol as a reason for denying the mitigating sentencing argument. And again, with regard to the possession offenses, the court specifically noted that part of its sentence or those particular aspects of Mr. Chapman's backgrounds, part of the reason for the punishment or Mr. Chapman was being, quote, punished in the case was because of that background. Conditions of supervision don't deal with punishment. They're meant for rehabilitation, public safety. They are not meant to punish. So the only thing that that could have factored into is with regard to the decision on confinement. Just a few matters with regard to clarify again with regard to the conditions of supervision. The government in its brief noted that the district court adopted, or excuse me, this court adopted or at least agreed to a 15 drink per week definition of excessive alcohol consumption with regard to a condition of supervision. Therefore, adopting some sort of definition of drink. That simply is inaccurate. The court in the opinion noted that that was one definition. There were others that related to blood alcohol content, related to the actual quantity of alcohol as a matter of volume in the beverage, and a number of things. And frankly, I think that really defines the problem here. And one of, there's not necessarily a right answer. The right answer is a clear answer. Is the district court specifically stating four drinks per week, per day, drink being defined as, and then filling in the blank. And there's very similar remedies as well to these other problems. Instead of several, two. Instead of, instead of drink, a definition of drink. And with that, I'll reserve the remainder of my time. Thank you. Thank you, counsel. Good afternoon, and may it please the court, Raj Lad on behalf of the United States. I want to address first the remarks at sentencing, the several. I actually agree with counsel. I think several typically means more than two. But what doesn't follow is any indication the district court was misled or relied on reliable information. Before the district court was the pre-sentence report, which set forth all of the convictions, all of the details. The sentencing memos of the parties, including the government, which properly set forth that used a word, several, that it... Were you the trial lawyer? I'm sorry? Were you the trial lawyer? I was the trial lawyer, but I did not handle the sentencing. A colleague of mine did. So I wasn't there, but I did file the sentencing memorandum. I'm familiar with the facts of the case. See, I was going to tell you, you led a sheltered life, but go ahead. So, and what the district court does say are concerns that are not triggered by the several. So the district court does say, I think driving under the influence as a crime is more serious than other driving offenses. And I think that is triggered, that concern is triggered by the nature of the crime, not by the remark. You know, I do think it's odd that district courts, because I'm not one anymore, do not have a more precise and standard way of defining conditions. Actually, Your Honor, that has changed recently. Well, I know that. But here, the district court said that he could not have more than four drinks in a 24-hour period. But what if he, as I said earlier, but what if he were to drink four drinks in one hour every day? I mean, wouldn't it be better if a district court had a standard statement that said, you know, no more than one drink per hour and no more than four drinks in any 24-hour period, where a drink is defined as 12 ounces of beer, 1.5 ounces of spirits, or 5 ounces of wine, which is a very low pour? Well, Your Honor, I think there are competing interests at stake here, because the conditions of supervised release have to be adhered to and followed by the defendant, and at a point when that defendant has been released from prison. So I think district courts, there's an incentive to make them simple, even if they're not as, maybe as restrictive as they should be. So by just saying four drinks in a day, perhaps that's giving Mr. Chapman a little more latitude than is warranted by the record, but it makes it a simple condition. The standard condition that was adopted later is now defining excessive use of alcohol in terms of blood alcohol content. But I've heard the opposite argument in cases that I've handled with that, which is, well, the defendant doesn't have access to a breathalyzer, the defendant doesn't know. So any definition is going to be subject to attack, but this is a pretty simple one for a person to follow. Most people have an understanding, at least people who drink alcohol, of what a drink means, and this is not a situation where he's being revoked on a record that doesn't support it. I think there, there might be more to say, but it's the possession issue. I do want to address that briefly. He has several drug convictions, that's for sure. Some of them are for distribution or manufacturing and distributing. Two of them are for possession, and when my colleague said several possessions, again, it was only two possessions. But the record amply supports the conclusion that the district court drew, which is that the defendant has a long history of involvement with drugs that does warrant the enhanced punishment that goes along with the career offender guideline. So unless the court has any other questions, I'll rest on the brief. How old was he when he was convicted? Mr. Chapman, I believe he was in his forties. It's just a second, Your Honor. And what, were you a 15-year sentence? Yes. So we're talking about somebody who's going to be at least 55 years old. That's right, Your Honor. And none of these conditions are going to apply until at least 13 years from now. That's the whole problem with this whole thing. We have no parole commission anymore. We're trying to set conditions of release 13 to 15 years and even sometimes 20 years in advance, which is ridiculous. I think it is a challenge, Your Honor. I think the one thing the district court did do here is, with respect to the mental health condition that the defendant is challenging, actually said, go for an evaluation and see if it's necessary and then take it. I think that's an attempt to address that issue. So for these reasons, the government asks that the judgment below be affirmed. Mr. Stevenson, how much time is there? We've got two minutes, Mr. Stevenson. Thank you, Your Honor. Specifically with regard to the other accurate information potentially being available in the PSR, the sentencing positions and things like that, I would note that in both Durham and Perez, there was no question that information was available as well. The actual sentencing hearing was the only piece of inaccurate information and that's still caused the sentence to be vacated and remanded. In addition, it was not a sentence solely based upon that inaccurate information in those two cases. Those were one piece of a broader picture, just as it was in Mr. Chapman's case. With regard to most other people knowing the definition, actually in my reply brief I cite to a study where actually most people do not know the standard definition of, and frankly it's an easy fix. And then with regard to Mr. Chapman's age, Judge Kaney, you brought that up, that also factors in with regard to his career offender designation and again why the mitigating sentencing argument here was so important. The age of his predicate convictions was so old and so long ago that there was a significant chance that that argument would have carried weight, again, absent that inaccurate information. For those reasons, we ask that you vacate Mr. Chapman's sentence and remand for resentencing. Thank you. Thank you, Counsel. You took this case by appointment, did you? I did. And thank you very much. We have the appreciation of the Court for your representation. Thank you. Thank you. Thank you. I join in that. The case will be taken under advisement and the Court will be in recess.